NOT DESIGNATED FOR PUBLICATION

Nos. 115,293, 115,294
115,295, 115,305

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACQUELINE L. COLEMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER, JR., judge. Opinion filed March 24, 2017.
Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., ATCHESON and BRUNS, JJ.

*Per Curiam*:  Jacqueline L. Coleman appeals from the district court's revocation of
her probation in four different cases. She also appeals the district court's classification of
one of her pre-1993 convictions as a person felony. On appeal, Coleman contends that the
district court abused its discretion by not allowing her to undergo addiction rehabilitation
instead of imposing her underlying sentence. Coleman further contends that the district
court should not have counted her 1992 involuntary manslaughter conviction as a person
felony in calculating her criminal history score. Finding no error, we affirm.

1

This appeal arises out of four criminal cases in Sedgwick County District Court. In May 2012, the State charged Coleman with felony theft after a prior conviction arising out of a shoplifting incident at a Dillon's store. After pleading guilty in that case, but prior to sentencing, the State again charged Coleman with felony theft for a shoplifting incident at a K-Mart occurring in January 2013. She was subsequently charged with yet another felony theft arising out of an incident of shoplifting at a Gordman's store. As she had done in the Dillion's case, Coleman also pled guilty in the K-Mart and Gordman's cases.

In August 2014, the district court sentenced Coleman to 13 months' imprisonment in each of the three cases. The sentences were to run consecutively. However, the district court placed her on probation in each case for a period of 12 months. Unfortunately, less than 6 weeks after sentencing, the State filed a warrant alleging that Coleman had failed to report to the Sedgwick County Department of Corrections Intake Unit or to her probation officer as she had been ordered to do as a condition of her probation.

At a probation hearing held in January 2015, Coleman admitted that she had violated the terms of her probation. The district court found that Coleman had absconded from probation and ordered her to serve a 45-day jail sentence. In addition, the district court reinstated her probation for 12 months. Less than 4 months later, the State filed another warrant against Coleman, alleging that she had committed a new theft, failed to pay court costs and restitution, failed to report to her probation officer, and failed to notify her probation officer of her contact with law enforcement.

In July 2015, the State charged Coleman with two counts of felony theft in connection with a shoplifting incident at a Kohl's store. Pursuant to a plea agreement, Coleman pled guilty to the new charges. In November 2015, the district court sentenced

her to serve 11 months in the new case, to serve her underlying 13-month sentences in two of the prior cases, and to serve a modified sentence of 8 months in the other prior case. The district court ordered all of the sentences to be served consecutively, resulting in a controlling term of 45 months in prison. Thereafter, Coleman timely appealed.

## ANALYSIS

On appeal, Coleman raises two issues. First, she contends the district court abused its discretion by revoking her probation and reinstating her underlying sentences. Second, she contends the district court erred in classifying her pre-1993 involuntary manslaughter conviction as a person felony in calculating her criminal history score.

*Revocation of Probation*

A district court's decision to revoke probation must be based on a factual finding that a condition of probation has been violated. Once a violation has been established, the decision to revoke probation has been traditionally considered within the discretion of the district court. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). In some instances, a district court is required to impose an intermediate sanction before imposing an underlying sentence. See K.S.A. 2015 Supp. 22-3716(c).

In this case, Coleman pled guilty to committing a new crime while she was on probation. As such, she candidly admits in her brief that the district court had discretion to revoke her probation without imposing an intermediate sanction. Because the district court was not required to impose an intermediate sanction, we review its decision under an abuse of discretion standard. Judicial discretion is only abused if: (1) no reasonable person would have taken the view adopted by the court; (2) the action was based on an error of law; or (3) the action was based on an error of fact. *State v. Mosher*, 299 Kan. 1,

3

3, 319 P.3d 1253 (2014). As the party alleging an abuse of discretion, Coleman bears the burden of proof on appeal. *State v. Decker*, 288 Kan. 306, 311, 202 P.3d 669 (2009).

Coleman contends that no reasonable person would have sentenced her to serve a controlling prison term of 45 months when drug and alcohol rehabilitation would have better suited her situation. She also cites to her poor health and her commitment to change her lifestyle. Although a reasonable person may have accepted her arguments as a reason to reinstate her probation and order rehabilitation, we cannot say that it was unreasonable for the district court to reject these arguments in light of Coleman's lengthy criminal history and her repeated failure to comply with the terms of her probation.

Moreover, the district court previously reinstated Coleman's probation and she committed a new crime—and other probation violations—within a few short months. Hence, it appears from our review of the record that the district court gave Coleman a sufficient opportunity to comply with the terms of her probation but that she was unable or unwilling to do so. Therefore, we conclude that a reasonable person could determine that Coleman's probation should be revoked and that her underlying sentence should be reinstated.

*Criminal History*

Coleman also contends that the calculation of criminal history score by the district court constitutes an illegal sentence. Under K.S.A. 22-3504, a court may correct an illegal sentence at any time. The Kansas Supreme Court has strictly defined what constitutes an illegal sentence. A sentence is illegal only if it fits within one of three categories: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provision, either in the character or term of the authorized punishment; or (3) it is ambiguous about the time or manner in which it is to be served. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Whether a sentence is illegal within the meaning of

K.S.A. 22-3504 is a question of law over which we have unlimited review. *State v. LaBelle*, 290 Kan. 529, 532, 231 P.3d 1065 (2010). Under K.S.A. 22-3504, an offender may challenge an illegal sentence at any time and a miscalculation of one's criminal history score is considered to be an illegal sentence. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015).

Specifically, Coleman argues that her sentence was illegal because the district court should not count her 1992 conviction for committing involuntary manslaughter in her criminal history score as a person felony. Whether a prior conviction is properly classified as a person or nonperson crime is also a question of law. *State v. Luarks*, 302 Kan. 972, 975-76, 360 P.3d 418 (2015). Criminal offenses that cause physical harm to another are usually considered to be person crimes, while criminal offenses that damage property are usually considered to be nonperson crimes. *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015).

The Kansas Sentencing Guidelines became effective in 1993. K.S.A. 1993 Supp. 21-4701 *et seq.* To classify a pre-1993 Kansas conviction as a person or nonperson crime, we must compare the prior-conviction statute to the "comparable offense" in effect on the date the current crime was committed. K.S.A. 2016 Supp. 21-6810(d)(2); see also *Keel*, 302 Kan. at 581. In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt factors "[o]ther than the fact of a prior conviction" that increase "the penalty for a crime beyond the prescribed statutory maximum . . . ." Under *Apprendi*, however, a district court may still use a prior conviction to calculate an offender's criminal history score so long as it does not involve factfinding. See *State v. Gould*, 271 Kan. 394, Syl. ¶¶ 2-6, 23 P.3d 801 (2001).

More recently, in *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), the United States Supreme Court found that lower courts may use

either a categorical or a modified-categorical approach to compare the elements of a prior conviction to the elements of a similar statute in effect at the time the current crime was committed. Under the categorical approach, a court need only look to the elements of the two offenses to make a determination. Where the prior-conviction statute contains alternative ways to commit a crime, a court may use the modified-categorical approach by looking at limited documents—such as indictments and jury instructions—to determine the alternative under which the defendant was convicted. 133 S. Ct. at 2281.

Kansas statute also directs us to find a "comparable offense under the Kansas criminal code in effect on the date the current crime of conviction was committed" when scoring a pre-July 1, 1993, offense as person or nonperson. K.S.A. 2016 Supp. 21-6810. However, when examining prior conviction statutes, they need only be comparable, not identical. See *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014) (discussing comparison between out-of-state convictions and comparable in-state statutes). Thus, Kansas does not follow the strict *Descamps* rule that requires the prior statute to be identical or narrower than the current statute. *State v. Moore*, 52 Kan. App. 2d 799, 813-14, 377 P.3d 1162 (2016).

In *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), the Kansas Supreme Court relied upon *Apprendi* and *Descamps* to find that the classification of a defendant's pre-1993 burglary conviction as a person felony violated the Sixth Amendment because the determination involved a question of fact that had not been made by a jury. Unlike involuntary manslaughter, which inherently involves harm to a person, burglary can be either a person crime—if it involves a dwelling where a person could be potentially harmed—or a nonperson crime—if it simply involves property. Accordingly, making a determination regarding which category a particular burglary falls within can involve unconstitutional "judicial factfinding that goes beyond merely finding the existence of a prior conviction or the statutory elements constituting that prior conviction" that is prohibited by *Apprendi* and *Descamps*. 301 Kan. at 1054.

6

Here, we do not find that judicial factfinding is necessary in order to decide whether the district court should classify Coleman's pre-1993 involuntary manslaughter conviction as a person felony for sentencing purposes. As such, this case does not implicate *Apprendi*, *Descamps*, and *Dickey*. First, it is undisputed that the State convicted Coleman of involuntary manslaughter in 1992. Second, we find that K.S.A. 2016 Supp. 21-5405—which has been in effect since July 1, 2011—is comparable to the involuntary manslaughter statute under which Coleman was convicted in 1993.

Both K.S.A. 21-3404(a) (Ensley 1988) and K.S.A. 2016 Supp. 21-5405(a) define involuntary manslaughter as the "killing of a human being" unlawfully. As such, involuntary manslaughter was a person crime in 1992 and remains a person crime to this day. Likewise, although the severity levels in the two statutes are slightly different depending on which subsections are applicable, the State classified the crime as a felony in 1992 and continues to classify it as a felony. K.S.A. 21-3404(c) (Ensley 1988) and K.S.A. 2016 Supp. 21-5405(b). Thus, it is unnecessary for us to look to the facts of the crime or to additional documents to conclude that the two statutes are comparable and that the district court properly scored Coleman's 1992 involuntary manslaughter conviction as a person felony.

Affirmed.